UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

TRELLIS QUINN,

                                Plaintiff,

        v.

GABRIELA NASERA, *et al.*,

                                Defendants.

Case No. 2:24-cv-00635-MMD-NJK

SCREENING ORDER (SAC)

## I.    SUMMARY

On June 5, 2024, the Court issued an order screening *pro se* Plaintiff Trellis Quinn's First Amended Complaint ("FAC") under 28 U.S.C. § 1915A. (ECF No. 7.) The screening order deferred a decision on Plaintiff's application to proceed *in forma pauperis*, dismissed the FAC without prejudice for including improperly joined claims, and granted Plaintiff leave to amend. (*Id.*) Plaintiff filed a Second Amended Complaint ("SAC") (ECF No. 8), and the SAC is now the operative complaint. The Court will screen the SAC under 28 U.S.C. § 1915A and address the application to proceed *in forma pauperis*.

## II.    SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United

States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, the Prison Litigation Reform Act requires federal courts to dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle them to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact in the complaint and construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *See id*.

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption

2

1  of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide

2  the framework of a complaint, they must be supported with factual allegations." *Id.* "When

3  there are well-pleaded factual allegations, a court should assume their veracity and then

4  determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining

5  whether a complaint states a plausible claim for relief . . . [is] a context-specific task that

6  requires the reviewing court to draw on its judicial experience and common sense." *Id.*

7        Finally, all or part of a complaint filed by an incarcerated person may be dismissed

8  *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This

9  includes claims based on legal conclusions that are untenable (*e.g.*, claims against

10  defendants who are immune from suit or claims of infringement of a legal interest which

11  clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*,

12  fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989);

13  *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

14  **III.   SCREENING OF SAC**

15        In the SAC, Plaintiff sues multiple Defendants for events that took place while he

16  was incarcerated at Southern Desert Correctional Center ("SDCC"). (ECF No. 8 at 1.) He

17  sues the State of Nevada, the Nevada Department of Corrections ("NDOC"),[1] Warden

18  Gabriela Najera[2], Associate Warden Karissa Currier, and Correctional Lieutenant Jose

19  Navarrette. (*Id.* at 1-2.) Plaintiff brings three claims, requesting monetary damages and

20  the return of statutory good time credits. (*Id.* at 4-7, 10.) He alleges the following.

21        Plaintiff faced disciplinary charges for possession of contraband and possession

22  or sale of intoxicants. (*Id.* at 4.) At a disciplinary hearing on June 29, 2023, Lt. Navarrette

23  found Plaintiff guilty on both charges. (*Id.*) Navarrette did not allow Plaintiff to call any

24  witnesses, including Plaintiff's cellmate, who had admitted responsibility for the

25

26        [1]The State of Nevada and NDOC are not proper parties to this action because

27  states and state agencies are not "persons" who can be sued for purposes of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989). The Court therefore dismisses

28  these Defendants from this action with prejudice, as amendment would be futile.

        [2]Defendant's surname is listed elsewhere as "Nasera."

3

1    contraband charge. (*Id.*) After the hearing, Navarrette falsely stated on the Summary of

2    Disciplinary Hearing form that Plaintiff declined the opportunity to call a witness. (*Id.* at 5,

3    21, 24.) Navarrette also relied solely on officer reports to support the guilty findings. (*Id.*

4    at 3-4.) Plaintiff's sanctions for these convictions included disciplinary segregation, loss

5    of statutory good time credits, phone restriction, and commissary restriction. (*Id.* at 4.)

6    Plaintiff appealed, and Warden Najera reversed the findings of guilt and accompanying

7    sanctions. (*Id.* at 11, 25.) Plaintiff, however, did not receive the statutory good time credits

8    back, nor did he receive the monetary compensation that he requested on an NDOC

9    Administrative Claim Form. (*Id.* at 4.) Plaintiff alleges that Warden Najera and Associate

10    Warden Currier are liable for failing to ensure that Plaintiff received these remedies after

11    the guilty findings were reversed. (*Id.* at 6-7.)

12        Based on these allegations, Plaintiff brings an Eighth Amendment claim for cruel

13    and unusual punishment and a Fourteenth Amendment claim for deprivation of due

14    process. (*Id.* at 4-7.) The Court will address each claim.

15        **A.    Eighth Amendment Cruel and Unusual Punishment**

16        The Eighth Amendment's prohibition of cruel and unusual punishments places a

17    broad range of responsibilities on prison officials, including barring them from using of

18    excessive physical force, requiring them to take reasonable measures to guarantee the

19    safety of inmates, and obligating them to provide humane conditions of confinement by

20    supplying adequate food, clothing, shelter, and medical care. *See Farmer v. Brennan*,

21    511 U.S. 825, 832–33 (1994) (citations omitted). "Detention beyond the termination of a

22    sentence could" also "constitute cruel and unusual punishment if it is the result of

23    'deliberate indifference' to the prisoner's liberty interest." *Haygood v. Younger*, 769 F.2d

24    1350, 1354 (9th Cir. 1985) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976)).

25    Plaintiff does not specify what type of Eighth Amendment claim he is attempting to bring

26    in this case, and the substance of the allegations does not lend itself to a reasonable

27    inference as to his intention. *See Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010)

28    (citing *McKinney v. De Bord*, 507 F.2d 501, 504 (9th Cir. 1974) (clarifying that the liberal

4

1  construction afforded to *pro se* parties does not entitle them "to the benefit of every

2  conceivable doubt; the court is obligated to draw only reasonable factual inferences in the

3  [party's] favor")). Plaintiff also does not allege that he was held beyond the termination of

4  his sentence. Accordingly, Plaintiff fails to state a colorable Eighth Amendment claim for

5  cruel and unusual punishment. The Court dismisses this claim without prejudice and

6  without leave to amend.

7  **B.    Fourteenth Amendment Due Process**

8  "The Fourteenth Amendment's Due Process Clause protects persons against

9  deprivations of life, liberty, or property; and those who seek to invoke its procedural

10  protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545

11  U.S. 209, 221 (2005). When analyzing a due process claim, courts engage in a two-step

12  analysis: (1) "determine whether the inmate was deprived of a constitutionally protected

13  liberty or property interest," and (2) "examine whether that deprivation was accompanied

14  by sufficient procedural protections." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir.

15  2022) (citing *United States v. 101 Houseco, LLC*, 22 F.4th 843, 851 (9th Cir. 2022)). "An

16  interest in avoiding certain conditions of confinement constitutes a liberty interest

17  protected by the Due Process Clause if the challenged condition imposes atypical and

18  significant hardship on the inmate in relation to the ordinary incidents of prison life."

19  *Ashker v. Newsom*, 81 F.4th 863, 887 (9th Cir. 2023) (citations and quotation marks

20  omitted). "[T]here is no single standard for determining when circumstances are atypical

21  and significant," but the Ninth Circuit has "detailed three guiding considerations: (1)

22  whether the challenged condition mirrored those conditions imposed upon inmates in

23  administrative segregation and protective custody, and thus comported with the prison's

24  discretionary authority; (2) the duration of the condition and the degree of restraint

25  imposed; and (3) whether the state's action will invariably affect the duration of the

26  prisoner's sentence." *Id.* (citations and quotation marks omitted).

27  Plaintiff alleges that his disciplinary convictions came with four sanctions:

28  disciplinary segregation, phone restriction, commissary restriction, and loss of statutory

good time credits. Plaintiff also takes issue with Defendants' failure to award him the monetary compensation he requested in an Administrative Claim Form.

As an initial matter, Plaintiff does not have a protected interest in the requested monetary compensation because it was not deducted from his account as a sanction for the disciplinary convictions; it was simply not awarded to him as a remedy after the convictions were reversed. *See Vance v. Barrett*, 345 F.3d 1083, 1089 n.6 (9th Cir. 2003) (holding that inmates have a protected property interest in their inmate accounts).

As for the disciplinary segregation, Plaintiff does not allege any facts about the details of that environment or how long he was placed there. Plaintiff also does not allege that he has a condition making placement in disciplinary segregation particularly harsh for him personally. *See Serrano v. Francis*, 345 F.3d 1071, 1078-79 (9th Cir. 2003) (holding that an inmate's placement in administrative segregation implicated a protected liberty interest only because he had a disability that resulted in those conditions imposing an atypical and significant hardship on him). Plaintiff has not established that placement in disciplinary segregation alone imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. *See id.* at 1078 (collecting cases) ("Typically, administrative segregation in and of itself does not implicate a protected liberty interest.").

As for the phone and commissary restrictions, Plaintiff does not explain what these restrictions entailed or how long he experienced them. So these temporary restrictions do not give rise to a protected liberty interest either. *See Ashker*, 81 F.4th at 889 (quoting *Johnson*, 55 F.4th at 1196) ("[R]estrictions constituting atypical and significant hardship should cause a 'material change in the underlying conditions of [an inmate's] confinement,' with 'incidental, fleeting benefits' . . . failing to rise to that level."); *Koerner v. Angelone*, Case No. 97-15681, 1999 WL 1103339, at *3 (9th Cir. Dec. 6, 1999) (holding that "80-day suspension from the prison canteen" did not implicate a protected liberty interest).

That leaves the loss of statutory good time credits. Plaintiff does not specify the statutory framework he is referring to here, but the Court assumes that the relevant statute is NRS § 209.4465, which permits the award of credit deductions from an inmate's minimum and/or maximum sentence in certain circumstances. *See Galanti v. Nev. Dep't of Corr.*, 65 F.4th 1152, 1156-57 (9th Cir. 2023) (comparing this statute to other states' "good-time statutes"). Liberally construing the SAC in Plaintiff's favor, the Court infers that Plaintiff is alleging that the sanction in question could have affected either his minimum sentence or his maximum sentence.

An award of credits to an inmate's minimum sentence has the effect of moving up a parole eligibility date. *See* NRS 209.4465(7)(b); *Williams v. State Dep't of Corr.*, 402 P.3d 1260, 1262 (Nev. 2017). And "Nevada prisoners do not have a liberty interest in parole." *Galanti*, 65 F.4th at 1156 (citing *Moor v. Palmer*, 603 F.3d 658, 661-62 (9th Cir. 2010)). Thus, to the extent that Plaintiff is claiming that prison officials removed credits that had been awarded to his minimum sentence as a sanction for the disciplinary convictions, Plaintiff fails to establish a protected liberty interest.

It appears that an award of credits to an inmate's *maximum* sentence, however, may invariably affect the duration of the inmate's sentence.[3] *See* NRS 209.4465(7)(a); *Galanti*, 65 F.4th at 1156 (citations omitted) ("Despite being instructed by [the Ninth Circuit] to brief the issue, Defendants do not respond to [Plaintiff's] argument that [NRS] § 209.4465 contains the mandatory language necessary to create a constitutionally protected liberty interest in maximum-sentence deductions, similar to good-time statutes [the Ninth Circuit has] previously found to create liberty interests."). Therefore, for the purposes of this screening order, the Court finds that Plaintiff has plausibly alleged that one of the sanctions accompanying his disciplinary convictions implicated a protected liberty interest. *See Igbinovia v. Dzurenda*, Case No. 2:19-cv-00588-RFB, 2024 WL

---

[3]That is, so long as the inmate is not serving a life sentence. *See Witherow v. Farwell*, 383 F. App'x 688 (9th Cir. 2010) (citations omitted) ("Nevada has not created a liberty interest in the application of good time credits to a life sentence."). There is no indication that Plaintiff is serving such a sentence here.

1   1345210, at *3 (D. Nev. Mar. 29, 2024) (finding that the deprivation of maximum-sentence

2   deductions under this statute "creates a liberty interest").

3          When a protected liberty interest exists and a prisoner faces disciplinary charges,

4   officials must provide the prisoner with certain procedural safeguards, including the

5   opportunity to call witnesses, unless calling witnesses would interfere with institutional

6   security. *See Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974). Plaintiff alleges that Lt.

7   Navarrette committed a procedural error by not allowing him to call a witness during the

8   disciplinary hearing.

9          However, the Court finds that Plaintiff fails to state a colorable due process claim

10  on this basis. Even if Lt. Navarrette committed a procedural error, that error was cured

11  through the administrative appeal process when Warden Najera reversed the disciplinary

12  convictions and associated sanctions. *See Frank v. Schultz*, 808 F.3d 762, 764 (9th Cir.

13  2015) (collecting cases to establish that procedural errors may be corrected through a

14  prison's administrative appeal process). It is important to note that Najera expressly

15  ordered the return of Plaintiff's good-time credits when the disciplinary convictions were

16  reversed on appeal. (ECF No. 8 at 11, 25.) "[A]dministrative appeal is considered part of

17  the process afforded, and any error in the process can be corrected during that appeals

18  process without necessarily subjecting prison officials to liability for procedural violations

19  at lower levels." *See Frank*, 808 F.3d at 764 n.4 (quoting *Torricellas v. Poole*, 954 F.

20  Supp. 1405, 1414 (C.D. Cal. 1997)). Accordingly, the Court dismisses Plaintiff's due

21  process claim without leave to amend in this case, as this claim fails as a matter of law.

22         The Court recognizes Plaintiff's allegation that, despite Warden Najera's ruling on

23  appeal, Plaintiff's good-time credits have not actually been returned to him. Accepting this

24  allegation as true, Plaintiff's concern is understandable, but that does not alter the Court's

25  conclusion that Plaintiff has not stated a colorable due process claim in federal court.

26  Instead, it appears that the proper avenue for Plaintiff to bring a claim about the

27  application of good-time credits to his sentence is in state court, through a postconviction

28  petition for a writ of habeas corpus under NRS § 34.724(2)(c), after he exhausts all

8

available administrative remedies. *See Williams*, 402 P.3d at 1262 (clarifying that a claim about the application of credits earned under NRS § 209.4465 "challenges the computation of time served and therefore is raised properly in a postconviction petition for a writ of habeas corpus"). The Court takes no position on the merits of any such petition Plaintiff may file.

## IV.    CONCLUSION

It is therefore ordered that Plaintiff's Second Amended Complaint (ECF No. 8) is the operative complaint in this action.

It is further ordered that the Second Amended Complaint (ECF No. 8) is dismissed in its entirety.

It is further ordered that the Eighth Amendment claim for cruel and unusual punishment and the Fourteenth Amendment due process claim are dismissed without prejudice and without leave to amend in this case because amendment would be futile.

It is further ordered that Defendants State of Nevada and NDOC are dismissed from this action with prejudice, as amendment would be futile.

It is further ordered that Plaintiff's application to proceed *in forma pauperis* (ECF No. 5) is granted. Plaintiff is not required to pay an initial installment fee, but the full $350 filing fee will still be paid in installments under 28 U.S.C. § 1915.

It is further ordered that, under 28 U.S.C. § 1915, the Nevada Department of Corrections will forward payments from the account of Trellis Quinn, #93626 to the Clerk of the United States District Court, District of Nevada, at a rate of 20% of the preceding month's deposits (in months that the account exceeds $10.00) until the full $350 filing fee has been paid for this action.

The Clerk of Court is kindly directed to send a copy of this order to the Finance Division of the Clerk's Office and to the Chief of Inmate Services for the Nevada Department of Corrections at formapauperis@doc.nv.gov.

It is further certified that any appeal from this order would not be taken "in good faith" under 28 U.S.C. § 1915(a)(3), so *in forma pauperis* status should not continue on any appeal.

The Clerk of Court is further directed to close this case and enter judgment accordingly.

DATED THIS 26th Day of February 2025.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

10